**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 29 2012, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD R. SHULER**
Barkes, Kolbus & Rife, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T.WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CALVIN J. SPAULDING,           )
                               )
    Appellant-Defendant,       )
                               )
      vs.                    )        No. 20A03-1107-CR-346
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.        )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-0803-FA-23

**February 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Calvin J. Spaulding appeals his sentence for three counts of child molesting as class A felonies and being an habitual offender. Spaulding raises two issues, which we revise and restate as:

I.      Whether the trial court abused its discretion in sentencing Spaulding; and

II.     Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. Lynn Jones met Spaulding when she was ten years old and her mother married Spaulding's father. Spaulding lived primarily with his mother but visited his father on the weekends. A couple of years later, Jones moved to West Virginia and did not have much contact with Spaulding. On March 2, 1996, Jones gave birth to J.K.

In the summer of 2003, Jones became reacquainted with Spaulding while they were visiting a mutual sister in Goshen, Indiana. Jones and Spaulding would "do the weekend thing, races, and do things with the kids," and "it just progressed into boyfriend/girlfriend." Transcript at 452. Spaulding moved in with Jones when J.K. was seven or eight years old. Spaulding assumed the role of father to J.K., and J.K. called Spaulding "Papa." Id. at 375.

In 2007, Spaulding began to provide eleven-year-old J.K. with cigarettes and alcohol and told J.K. that if he was going to give her cigarettes and alcohol, then "[J.K.] would have to do something for him," but he did not explain what she would have to do. Id. at 383. A couple of weeks later, J.K. stayed home sick from school with Spaulding

2

while Jones was at work. J.K. was in Jones's bed when Spaulding came into the room and lay next to her. Spaulding put his hand on J.K.'s vagina over her clothes and then moved his hand into her pants and rubbed her vagina with his finger. When J.K. left the room, Spaulding told her not to tell anybody.

On another occasion, Spaulding went downstairs and joined J.K. in the basement while her mother was upstairs. Spaulding gave J.K. cigarettes and told her to remove her pants and bend over, and Spaulding then inserted his penis into her vagina. At some point, J.K. told Spaulding that she did not want to do this, and Spaulding told her that he would stop giving her alcohol and cigarettes.

On December 1, 2007, J.K. was in her room when Spaulding entered, and without being asked, J.K. "took off everything because [she] knew what [Spaulding] wanted" because her mother was gone. Id. at 391. J.K. lay down, and Spaulding took off his pants, lay down on top of J.K., and inserted his penis into her vagina. Jones called to say that she was coming home, and Spaulding left J.K.'s room. When Jones returned home, Spaulding took J.K.'s older sister to a winter dance at her school.

After Spaulding left, Jones told J.K. to clean her room, and J.K. started screaming at her mother and slamming doors. Jones asked J.K. what her problem was, and J.K. told her mother that "[i]f I told you what was going on, it would ruin this family." Id. at 456. At some point later and approximately four months after the molestation began, J.K. told her mother that Spaulding had been molesting her. When Spaulding returned to the house, Jones started screaming at Spaulding, threw his clothes at him, and told him that he had to move out, and Spaulding hung his head and said that "he was glad it was out in

3

the open." Id. at 458. Spaulding left the next day and told Jones that he was going to turn himself in after he "helped her get [her] car running." Id. at 464. For the next three months, Spaulding was allowed to "have contact around [J.K.'s] residence." Id. at 395.

In late December, Spaulding called his sister, Shelia Blyly, and told her that he was going to kill himself. Blyly asked Spaulding if he and his girlfriend had another fight, and Spaulding replied, "yes, something like that." Id. at 418. Spaulding also said that he was tired of hurting the people he loves and told Blyly that he molested J.K. In March 2008, Blyly went to a wedding reception and saw Spaulding, Jones, and J.K. together. Blyly then went home and called the Elkhart Police Department and subsequently made a report at the police station.

Elkhart City Police Detective Carlton Dean Conway called Spaulding's place of employment. Spaulding called Detective Conway the following day and told Detective Conway that he "wanted to turn himself in" and that "he was the guilty one." Id. at 496. Spaulding then went to the police station and gave Detective Conway a statement. Specifically, Spaulding told Detective Conway that he molested J.K. and "coerced her into" "[s]exual intercourse, fellatio, cunnilingus." Id. at 508, 510. Spaulding "talked about how he caught [J.K.] stealing cigarette butts, and he used that as an . . . like dangling a carrot on a stick." Id. at 510. Spaulding also admitted that others were in the house when he molested J.K. Spaulding stated that J.K. "didn't know what she was doing" and that she "went along with it, because sexual stimulation feels good, you know." Id. at 510-511. When Detective Conway asked Spaulding why Jones and he waited so long before coming in to talk to him, Spaulding "said the reason why was

4

because he was helping [Jones] fix a vehicle," "they had property that needed to be returned to friends that they had borrowed from," "they had some puppies that they were tending to," and that "he wanted to reach out to his pastor for spiritual guidance and make contact with J.K. to ask her for her forgiveness." Id. at 513.

On March 24, 2008, the State filed an information charging Spaulding with one count of child molesting as a class A felony. On April 10, 2008, the State filed an amended information charging Spaulding with being an habitual offender. On December 30, 2008, Spaulding filed a Motion to Determine Competency, which the court granted and issued an Order for Mental Examination that same day. On April 23, 2009, after receiving competency evaluations from two psychiatrists, the court determined that Spaulding was competent to stand trial. In February 2011, the State filed an amended information charging Spaulding with two additional counts of child molesting as class A felonies.

After a three-day jury trial in March 2011, the jury found Spaulding guilty of three counts of child molesting as class A felonies, and Spaulding admitted to being an habitual offender. At sentencing, the court characterized Spaulding as the worst of the worst. The court found Spaulding's criminal history, position of trust, and the use of cigarettes and alcohol to "groom" J.K. as aggravators. Appellant's Appendix at 148. The court also "considered the fact that [Spaulding] molested [J.K.] on repeated occasions over an extended period of time." Id. The court sentenced Spaulding to fifty years for each count of child molesting, ordered the sentences to be served concurrently with each other, and

5

enhanced the sentence by thirty years due to the habitual offender finding. Accordingly, Spaulding was sentenced to an aggregate term of eighty years.

## I.

The first issue is whether the trial court abused its discretion in sentencing Spaulding. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

Spaulding argues that the trial court abused its discretion in failing to identify his depression as a significant mitigating factor. Spaulding points to the reports following psychiatric examinations to determine his competency to stand trial. The State argues that "Spaulding's depression was not ever put into the record during trial . . . and so the claim is waived" and that "there is nothing in the record to support treating his alleged

6

depression as a mitigating factor for purposes of appellate review or remand." Appellee's Brief at 11.

Spaulding did not argue at the sentencing hearing that his alleged mental illness or depression constituted a mitigating circumstance. As a result, we cannot say that the court abused its discretion in failing to consider any alleged mental illness as a mitigating circumstance. See Anglemyer, 868 N.E.2d at 492 (noting that "[a]s our courts have determined in the past, the trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing"); see also Carter v. State, 711 N.E.2d 835, 838-839 (Ind. 1999) (holding that the trial court did not abuse its discretion in failing to consider a mitigating circumstance which was not raised at sentencing); Creekmore v. State, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006) (noting that "if the defendant fails to advance a mitigating circumstance at sentencing, this court will presume that the factor is not significant, and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal"), clarified on denial of reh'g, 858 N.E.2d 230.

## II.

The next issue is whether Spaulding's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Spaulding argues that "the maximum enhancement imposed by the trial court above the advisory sentence" is inappropriate. Appellant's Brief at 15. Spaulding argues that "[t]he nature of these offenses contain nothing particularly outrageous that is above and beyond what is generally necessary to establish Child Molesting . . . ." Id. Spaulding points out that all of his prior convictions are for offenses that occurred well over ten years ago. Spaulding also argues that he "suffered from a depressive disorder, along with prior diagnoses of mental health issues." Id. at 17.

The State points to the impact on J.K. of the offense, the position of trust, that Spaulding "induced her into having sex with him by providing her with alcohol and cigarettes," and that "when J.K. told him she wanted the sex to stop, Spaulding threatened to cut off her supply of alcohol and cigarettes." Appellee's Brief at 15. The State argues that Spaulding committed the offenses against J.K. multiple times and that he could not remember how many times he had sex with J.K. The State argues that "given the frequency of the crimes' commission, Spaulding could have been, and more than arguably should have been, sentenced to consecutive sentences." Id. at 16. The State also argues that "Spaulding's depression was not ever put into the record during trial . . . and so the claim is waived" and that "there is nothing in the record to support treating his alleged depression as a mitigating factor for purposes of appellate review or remand." Id. at 11.

Our review of the nature of the offense reveals that Spaulding molested his girlfriend's eleven-year-old daughter J.K. who had called him "Papa" and had lived with Spaulding since she was seven or eight years old. Transcript at 375. Spaulding placed

8

his hand on J.K.'s vagina and rubbed her vagina. Spaulding also inserted his penis into J.K.'s vagina on two separate occasions. Spaulding provided J.K. with cigarettes and alcohol and later described providing J.K. with cigarettes as "dangling a carrot on a stick." Id. at 510. Spaulding also told J.K. not to tell anybody and that he would stop giving J.K. alcohol and cigarettes when she told him that she did not want to "do this." Id. at 395. J.K. testified that Spaulding would give cigarettes or alcohol to her before asking her to be touched or her submission to being touched. Spaulding decided how much alcohol J.K. would drink, and J.K. would normally drink "[f]our and a half inches" worth of flavored vodka. Id. at 389.

Our review of the character of the offender reveals that Spaulding was born in 1965 and has misdemeanor convictions for three counts of driving while suspended and one count of operating a motor vehicle with a BAC of .10% or more as a class C misdemeanor. In 1985, Spaulding was convicted of burglary as a class C felony. In 1990, Spaulding was charged with child molesting as a class C felony, and, in August 1994, was convicted as charged. Spaulding was ordered to serve seven years with four years suspended, consult a psychiatrist, attend specialized sex offender therapy, and have no contact with children unless in the presence of an adult related to the child who was aware of his conviction. In June 1994, Spaulding was charged with child molesting as a class B felony and was convicted in 1995. Spaulding was ordered to serve ten years in the Department of Correction and was released in December 2004. The presentence investigation report indicates that Spaulding has violated probation five times in the past

9

with the most recent violation occurring in October 2005.  Spaulding participated in sex offender treatment while on probation and parole in prior cases.

After due consideration, of the trial court's decision, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Spaulding's sentence for three counts of child molesting as class A felonies and being an habitual offender.

Affirmed.

MAY, J., and CRONE, J., concur.